## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **DENNIS GUAGLIANONE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | |
| **DANNEL P. MALLOY** | : | **3:13-CV-00012-VLB** |
| **Defendant.** | : | |
| | : | **SEPTEMBER 30, 2014** |

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION TO DISMISS (DOC. NO. 25) AND DENYING PLAINTIFF'S MOTION TO STAY (DOC. NO. 35)

Plaintiff Dennis Guaglianone ("Guaglianone") brings this action against Governor Dannel Malloy ("Malloy") in his official capacity as Governor of the state of Connecticut. Guaglianone challenges judgments, apparently entered in the 1990s, in his divorce proceedings in Connecticut Superior Court, as well as more recent child support orders entered in that action.  Malloy has moved to dismiss Guaglianone's complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.  Plaintiff has filed a "Motion to Stay," apparently seeking relief from enforcement of a child support order.  For the foregoing reasons, the court GRANTS defendant's motion to dismiss as to all claims, and DENIES plaintiff's motion to stay.

## II. FACTS

The court begins by addressing the question of which complaint is the operative complaint.  Plaintiff filed his first complaint on January 7, 2013. Defendant filed a motion to dismiss on July 15, 2013, and plaintiff then filed an

amended complaint on August 6, 2013.[1]  On September 26, 2013, defendant filed a motion to dismiss the amended complaint, which is the subject of this opinion. On February 24, 2014, plaintiff filed a second amended complaint, although the document is dated October 18, 2013.  The second amended complaint is substantively identical to the first amended complaint, with the exception that the second amended complaint adds one additional count, Count Five, and names two additional defendants, : Barbara Quinn, Chief Administrative Judge, and Charisse Hutton, Director of Support Enforcement.  Plaintiff did not assert that the Defendant consented to the filing of the second amended complaint, file a motion seeking leave to file the second amended complaint, or file a motion seeking leave to join the two additional proposed defendants.  Nevertheless, because plaintiff is pro se, and because it will not change the outcome of the court's review of plaintiff's claims, the court will consider the second amended complaint as though it were properly filed, and citations to the complaint cite to the second amended complaint, Doc. No. 30, unless otherwise noted.  Further, the court notes that although plaintiff has submitted to the Clerk's Office a Form 285 request for the United States Marshall Service to serve the two additional proposed defendants, that request has not yet been executed by the Clerk, and the court directs the Clerk to return that request to the plaintiff along with this opinion.

This case arises out of a divorce action in Connecticut Superior Court that was allegedly initiated by plaintiff's now ex-wife. On December 11, 1995, following

---

[1] The court denied defendant's first motion to dismiss as moot after defendant filed his second motion to dismiss.  Doc. No. 31.

an eight-day trial, plaintiff was awarded temporary custody of the couple's minor children.  Am. Compl. at 1.  Connecticut Family Relations recommended to the court at that time, and again in September 1996, that plaintiff be awarded permanent custody of the minor children.  Am. Compl. at 1.  On June 30, 1997, apparently after holding a second trial regarding child custody, Judge DeMayo awarded plaintiff's ex-wife custody of their minor children.  Am. Compl at 2.  Plaintiff filed a motion to reopen this decision, and also filed motions to reopen decisions entered on September 9 and September 16, 1997, although the Complaint does not state what these latter two decisions regarded.  Am. Compl. at 2.  The motions to reopen were denied in May 1998 by Judge DeMayo, and plaintiff then filed an appeal.  Am. Compl. at 2.  In April 1998 plaintiff filed a motion for modification of custody, after allegedly discovering that his ex-wife was abusing the children.  Am. Compl. at 2.  Plaintiff alleges that in May 1998 Judge DeMayo was "forced to recuse" himself after admitting to an ex parte discussion with plaintiff's ex-wife.  Am. Compl. at 2. In July 1998 plaintiff's ex-wife filed a motion seeking permission to leave the state of Connecticut.  Am. Compl. at 2.  In July 1998 another Family Relations study was commenced; the study concluded on November 30, 1998.  Am. Compl. at 2.  In January 1999 plaintiff's ex-wife was found in contempt of court after she took the children out of state in violation of the court order.  Am. Compl. at 2.  In March 1999 a third custody trial took place, with more than four days of trial in total.  Am. Compl. at 2.  Apparently as a result of this trial, Judge Stevens allowed plaintiff's ex-wife to move out of state with the children.  Am. Compl. at 2.  Plaintiff alleges that in the intervening

time he has gained evidence that his ex-wife abused the children, and disregarded court orders to allow plaintiff telephone contact and visitation rights with the children.  Am. Compl. at 2.

Plaintiff alleges that Judge DeMayo had "close personal contact" with his ex-wife before, during, and after Judge DeMayo awarded custody to his ex-wife in June 1997, and asserts that he has a sworn affidavit from the brother of his ex-wife confirming this fact.  Am. Compl. at 2.  Plaintiff also alleges that Judge DeMayo had a "close affiliation" with his ex-wife's attorney. Am. Compl. at 2. Plaintiff's Complaint does not provide any facts to support his allegation that Judge DeMayo had "close personal contact" with his ex-wife and a "close affiliation with her attorney.  Plaintiff alleges that Judge DeMayo, motivated by his personal relationship with plaintiff's ex-wife, had discussed plaintiff's case throughout the courthouse, "influenced other judges," and "continuously threatened to put the plaintiff in jail for speaking out about Judge DeMayo's involvement in the case."  Am. Compl. at 3.  Plaintiff alleges that he was incarcerated by Magistrate Judge McCarthy, whom plaintiff asserts was a friend of Judge DeMayo, to "silence" the plaintiff and prevent him from "defending his children from the affects [sic] of the child abuse that Judge DeMayo's decision assigned to them."  Am. Compl. at 2, 3.  Plaintiff lost his job and was left destitute as a result of the incarceration, and his ability to find other employment was "damaged."  Am. Compl. at 3.

Subsequent to but as a result of the dissolution and child custody proceedings, Plaintiff alleges that the Support Enforcement division of the

Connecticut Judiciary wrongly sent him a letter threatening to suspend his license[2] if he does not pay $64,002.00 in outstanding child support payments. Am. Compl. at 3.  Plaintiff alleges that the amount owed is an "outright lie and error" which the state refuses to correct, and that half of the amount is made up of his ex-wife's legal fees, which plaintiff disputes.  Am. Compl. at 3.  It is unclear from the Complaint whether plaintiff disputes paying the attorney fees altogether, or whether he is simply disputing the amount of fees.  Plaintiff has requested that the state garnish his wages, and his employer has agreed to do this, but the state has not yet done so.  Am. Compl. at 4.  Plaintiff alleges that he has been "extorted and threatened" by "Judge DeMayo and Support Enforcement," which caused his father to die from worry, and has left his mother destitute and unable to pay to bury his father.  Am. Compl. at 4.  Plaintiff asserts that the State of Connecticut refuses to investigate his allegations in an attempt to "cover up their crimes." Am. Compl. at 4.

Wholly independent of his other claims, Plaintiff raises a generalized challenge to the incarceration of non-custodial parents.  Plaintiff asserts that by using home detention rather than incarceration, the state could save money and reduce prison over-crowding, and allow individuals to keep their jobs.  Am. Compl. at 3.

Plaintiff states repeatedly throughout his Complaint that he has "additional facts which the plaintiff will present in court."  *See, e.g.*, Am. Compl. at 2.

---

[2] Plaintiff does not specify which license.

Plaintiff requests the following forms of relief: (1) "A stay on incarcerations and retaliation of the plaintiff in this case and other non-custodial parents"; (2) "Rules on judicial remedy for non-custodial parents which includes possible home arrest"; (3) "Investigation of the New Haven Judiciary, Connecticut Judiciary regarding this case"; (4) "Commission to redo custody and courts review with the involvement of father, child and family   civil rights advocates such as Dennis Guaglianone"; (5) "Order the State of Connecticut to appoint a special prosecutor to investigate criminal activity in the   New Haven J.D. acceptable to civil rights advocate Dennis Guaglianone"; (6) "Monetary relief the amount which will be presented by the plaintiff to the court"; (7) "Additional remedies which the plaintiff will present to the court. The plaintiff will continue to pursue this case until he gets justice"; (8) "Additional remedies against the defendants which the court will determine."  Am. Compl. at 4.

### III. STANDARD OF REVIEW

### A. Subject Matter Jurisdiction

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

### B. Failure to State a Claim

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face.'" *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and quotation omitted). During a motion to dismiss, the court is still "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  However, the complaint must still contain sufficient factual allegations to meet facial plausibility. *See Bilodeau v. Pillai*, No. 3:10-cv-1910, 2011 U.S. Dist. LEXIS 93346, at *2 (D. Conn. Aug. 22, 2011).

## IV. ANALYSIS

Defendant raises a number of arguments in support of his motion to dismiss: (1) the *Rooker-Feldman* doctrine strips the court of jurisdiction to hear plaintiff's claims; (2) review of any claims not barred from review by *Rooker-Feldman* is barred by the doctrine of *Younger* abstention; (3) the 11th Amendment bars all claims against Governor Malloy; (4) absolute judicial immunity bars all claims for money damages against judges in their individual capacities; (5) the domestic relations exception deprives the court of jurisdiction over any of plaintiff's claims seeking to alter child support orders; (6) plaintiff lacks standing to bring this action; (7) claims against Governor Malloy in his individual capacity are barred by qualified immunity; (8) plaintiff's equal protection and due process claims should be dismissed for failure to state a claim upon which relief can be granted; (9) plaintiff's eight amendment claim should be dismissed for failure to state a claim upon which relief can be granted; (10) plaintiffs' claims are barred by the applicable statutes of limitations.

Because the court finds that it lacks subject-matter jurisdiction over plaintiff's claims arising from his divorce and child custody proceedings, the court need not and will not reach most of defendant's arguments.

## A. The Rooker-Feldman Doctrine

The Rooker-Feldman doctrine divests federal courts of subject matter jurisdiction over challenges to state court judgments, and thus strips this court of subject matter jurisdiction to hear this case. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983). The Rooker-Feldman doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic Inds. Corp.*, 544 U.S. 280, 284 (2005)). "Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly banned by the Rooker–Feldman doctrine." *Gunn v. Ambac Assurance Corp.,* No. 11 Civ. 5497, 2012 U.S. Dist. LEXIS 110652, at *6 (S.D.N.Y. Aug. 6, 2012)) (citation omitted). "Even where a plaintiff alleges that a state court judgment was procured by fraud, Rooker–Feldman will divest the federal court of jurisdiction." *Aluria v. Jurgelas*, No. 3:12-cv-1443, 2013 U.S. Dist. LEXIS 73078, at *4 (D. Conn. May 23, 2013) (citation omitted).

Application of the Rooker-Feldman doctrine requires consideration of four factors: (1) the plaintiff bringing a claim in federal court must have already lost in

state court, (2) the state court judgment must have caused the injuries, (3) the plaintiff's complaint must invite the district court's review and rejection of the state court's judgment, and (4) the federal court proceedings must have been commenced after the state court's judgment. *Green*, 585 F.3d at 101.

## B.  The Domestic Relations Exception

The domestic relations doctrine "divests the federal courts of the power to issue divorce, alimony, and child custody decrees."  *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)).  "Although the exception is narrow, it applies where the gravamen of the plaintiff's suit involves an issue such as divorce."  *Pappas v. Zimmerman*, No. 13-cv-4883, 2014 U.S. Dist. LEXIS 109043, at *9-10 (E.D.N.Y. Aug. 6, 2014) (citing *Schottel v. Kutyba*, No. 06-1577-cv, 2009 U.S. App. Lexis 1916, at *3-4 (2d Cir. Feb. 2, 2009)).  Federal courts "should further abstain from exercising jurisdiction over cases 'on the verge' of being matrimonial in nature." *Hamilton v. Hamilton-Grinols*, 363 F. App'x 767, 769 (2d Cir. 2010) (quoting *Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir. 1990)). This exception is rooted in policy considerations recognizing both the "special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees" and that "state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees." *Ankenbrandt*, 504 U.S. at 704.

## C. Count One: Equal Protection Clause of the 14th Amendment

In Count One of his Complaint, plaintiff alleges that the State of Connecticut violated the Equal Protection Clause of the 14th Amendment by permitting his ex-wife to "work closely with judges in the New Haven Judicial District to cover up the abuse of [plaintiff's] children." Am. Compl. at 2. Plaintiff alleges in this claim that Judge DeMayo, who granted custody of plaintiff's minor children to plaintiff's ex-wife, had close personal contact with plaintiff's ex-wife, and a "close affiliation" with her attorney, and that Magistrate Judge McCarthy incarcerated plaintiff in order to cover up these facts. Plaintiff appears to be arguing that Judge DeMayo was conflicted, and that Judge DeMayo granted custody to plaintiff's ex-wife solely because of his personal relationship with her. Although plaintiff does not allege that plaintiff would have otherwise retained custody of his children had Judge DeMayo not been conflicted, in the interest of construing the pro se plaintiff's pleading liberally, the court will assume that plaintiff's pleading implicitly includes this allegation.

Consideration of this claim is barred by the *Rooker-Feldman* doctrine. Prong one is satisfied because plaintiff lost in the state court action, and prong two is satisfied because plaintiff alleges that the injuries were caused by the state court. Prong three is met because plaintiff's complaint invites this court to review and reject the state court judgments entered in his custody proceedings. Although plaintiff does not ask the court to award him custody of his children, and that issue may be moot given that the challenged order was entered nearly 16 years before the Complaint was filed, the relief plaintiff seeks, such as request for an "[i]nvestigation of the New Haven Judiciary, Connecticut Judiciary regarding

11

this case," would require this court to review and reject the state court judgments at issue.  Prong four is satisfied because this action was commenced well after the state court judgment, which was entered in 1997.  Because the *Rooker-Feldman* inquiry is satisfied, the court lacks subject matter jurisdiction over this claim.  *See, e.g.*, *Conway v. Garvey*, 135 Fed. App'x 485, 486 (2d Cir. 2005) (noting that "to the extent [plaintiff] seeks to relitigate the custody issues presided over by [the New York state family court judge], such claims are barred under the *Rooker/Feldman* doctrine, . . ."); *cf. Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005) (noting in dicta that "if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child.").

Consideration of Count One is also barred by the domestic relations exception, as this is a case in which plaintiff's claims "begin and end in a domestic dispute."  *Schottel*, 2009 U.S. App. Lexis 1916, at *3.  Because the court lacks subject matter jurisdiction over the claim under two separate doctrines, Count One is dismissed.

### D.  Count Two: Due Process Clause of the 14th Amendment – Arbitrary Incarceration

In Count Two plaintiff asserts that the State of Connecticut violated his 14th Amendment due process rights by incarcerating him "arbitrarily."  Am. Compl. at 2-3.  Plaintiff appears to be alleging in this claim that Judge DeMayo wished to have plaintiff incarcerated in order to prevent plaintiff from "speaking

out about judge [sic] DeMayo's involvement in the case" and that Judge DeMayo somehow influenced Magistrate Judge McCarthy's decision to incarcerate plaintiff.  Am. Compl. at 2-3.  Plaintiff further alleged that he lost his job as a result of the incarceration, and has been left destitute.

Plaintiff's challenge to his incarceration is clearly barred by the *Rooker-Feldman* doctrine.  The first three prongs of the doctrine are satisfied because the Plaintiff invites this court to review and reject an adverse judgment of the state court, which he alleges caused him substantial injuries.  Although plaintiff's complaint does not state when he was incarcerated, nor does defendant provide that information, the fourth prong is satisfied because it is clear from the Complaint that the order he challenges was entered before he commenced this action.  As the court lacks subject-matter jurisdiction over this claim, Count Two is dismissed.

Alternatively, to the extent that the Plaintiff asserts a habeas petition he fails to allege that his claim is timely.  *See* 28 U.S.C. § 2244(d)(1), imposing a one year statute of limitations. He also fails to establish that he has exhausted his state remedies.  *See* 28 U.S.C. §2244(d)(1)(A);  *see also Zarvela v. Artuz*, 254 F.3d 374, 378 (2d Cir. 2001) (petitioner is "required to exhaust in the state courts any constitutional claim he seeks to present in federal court") (citation omitted). Finally, given the age of the state court proceedings, it would appear that any claim has been procedurally defaulted at the state level depriving this court of jurisdiction. *Coleman v. Thompson*, 501 U.S. 722, 730-732 (1991).  Accordingly leave to amend appears futile.

**E.  Count Three: Due Process Clause of the 14th Amendment – Refusal to Consider Alternatives to Incarceration**

In Count Three, plaintiff alleges again that the State of Connecticut had plaintiff incarcerated in order to "silence" him, and that the state should have offered him home detention as an alternative.  Am. Compl. at 3. Although plaintiff does not plead explicitly that he would have kept his job had he been sentenced to home detention rather than incarceration, because plaintiff is pro se, the court will assume that the Complaint implicitly alleges that fact.

To the extent that plaintiff asserts to bring this claim on behalf of both himself and all other "non-custodial parents," plaintiff may not do so, as a layperson may not bring a class action lawsuit.  *See, e.g.*, *Biro v. Cuomo*, No. 12-cv-6189, 2014 U.S. Dist. LEXIS 42456, at *2 n.2 (E.D.N.Y. Mar. 27, 2014) ("Although Plaintiff purports to seek relief on behalf of a similarly situated class of plaintiffs, it is well-established that 'a *pro se* litigant . . . is not empowered to proceed on behalf of anyone other than himself.'") (quoting *Barnes v. Ross*, 926 F. Supp. 2d 499, 505 (S.D.N.Y. 2013)).  Further, to the extent that this claim challenges the order setting forth plaintiff's own incarceration, consideration of this claim is barred by the *Rooker-Feldman* doctrine, the statute of limitations, the exhaustion doctrine and lack or jurisdiction based on a state procedural defect,  for the reasons described above in Part IV.D.  Because plaintiff may not bring a class action, and because the court lacks subject-matter jurisdiction over a challenge to plaintiff's order of incarceration, Count Three is dismissed.

**F.  Count Four: Constitutional Violations Suffered During Incarceration**

In Count Four, plaintiff asserts that the condition of Connecticut state prisons violates prisoners' rights to reasonable bail and protection from cruel or unusual punishment under the 8th Amendment, as well as their human rights under United Nations accords.  Am. Compl. at 3.  Plaintiff also alleges that he suffered "lifetime injury" as a result of his incarceration, and that his 1st Amendment right to freedom of religion was violated while he was incarcerated. Am. Compl. at 3.

To the extent that Count Four again attempts to bring a claim on behalf of other "non-custodial parents" in Connecticut, the claim is dismissed for the same reasons set forth in Part IV.E.  Further, a review of plaintiff's challenge to his own order of incarceration is barred by the *Rooker-Feldman* doctrine for the reasons described above in Part IV.D, and this claim is dismissed for lack of subject-matter jurisdiction.

To the extent that Count Four is a challenge to the conditions of confinement plaintiff experienced in Connecticut state prisons, and/or a claim that plaintiff was denied freedom of religious practices in violation of the 1st Amendment while he was incarcerated, the court notes that plaintiff offers no facts to support these allegations.  Am. Compl. at 3.  Further, any claim arising from the conditions of plaintiff's confinement arises from separate occurrences than the claims regarding plaintiff's divorce and custody proceedings, and would rely on a completely separate set of facts.  Nor do these claims present common questions of law or fact, and resolution of each claim would require different witnesses and documentary proof.  Thus the court will not consider these claims

here, and instead, the court severs these claims, and dismisses them without prejudice to re-filing in a separate action.  *See* Fed. R. Civ. P. 21 ("The court may also sever any claim against a party."); *cf. New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988) ("The decision whether to grant a severance motion is committed to the sound discretion of the trial court.") (citation omitted). Because the dates of plaintiff's incarceration are not before the court, the court is unable to determine whether these claims would be barred by the applicable statute of limitations, the exhaustion doctrine, or a lack of jurisdiction as addressed above, and thus the claims are dismissed without prejudice to re-filing in a separate action.

## G. Count Five:  Deprivation of 14th Amendment Due Process Rights By Means of Child Support Bill

As noted above, Count Five was raised by plaintiff for the first time in his proposed second amended complaint, filed only after defendant had filed the motion to dismiss which is the subject of this opinion.  Although defendant's motion does not address Count Five, because the court lacks subject-matter jurisdiction over the claim, the court must dismiss this claim. *See Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000) ("failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*."); *see also Hickey v. Daniels*, No. 06-CV-6838, 2007 U.S. Dist. LEXIS 47822, at *1 (E.D.N.Y. July 2, 2007) (noting that the court had previously found sua sponte that it lacked subject matter jurisdiction over the case due to the domestic relations exception).

Plaintiff alleges in Count Five that the State of Connecticut violated his right to due process under the 14th Amendment when it sent plaintiff a letter threatening to suspend his license if he failed to pay $64,000 in child support. Am. Compl. at 3-4. Plaintiff disputes the amount owed, and alleges that the State of Connecticut is purposefully delaying investigation of plaintiff's allegations in order to "cover up their crimes." Am. Compl. at 4. Plaintiff alleges that stress caused by the State of Connecticut's actions lead to the death of his father, and has left his mother destitute.

Although plaintiff styles his allegations as civil rights claims, he is in fact challenging the amount and validity of a state court child support order entered in his divorce action. *Cf. Sobel v. Prudenti*, No. 12-cv-3258, 2014 U.S. Dist. LEXIS 83154, at *31-32 (E.D.N.Y. June 18, 2014) (finding that review of plaintiff's claims were barred by the domestic relations exception where plaintiff's complaint was "in effect, a civil rights action directed at challenging the results of domestic relations proceedings, and, in particular, a state court's decisions regarding child support."). This claim "begin[s] and end[s] in a domestic dispute," *Schottel*, 2009 U.S. App. Lexis 1916, at *3, and the domestic relations exception thus strips this court of jurisdiction to hear Count Five. *See, e.g., Donohue v. Pataki*, 28 Fed. App'x 59, 61 (2d Cir. 2002) (affirming district court's conclusion that it "lacked jurisdiction to invalidate or otherwise review the state court's decision affirming the modification of [plaintiff's] child support payments) (citing *Ankenbrandt*, 504 U.S. at 703); *Ruchinsky v. Devack*, No. 14-cv-2219, 2014 U.S. Dist. LEXIS 71221, at *25 (E.D.N.Y. May 23, 2014) ("Plaintiff cannot avoid operation of the domestic

relations exception by re-casting his challenge to the state court's child support decisions as a Civil RICO claim.").  As the court lacks subject-matter jurisdiction over this claim, Count Five is dismissed

## V.  Plaintiff's Motion to Stay

On May 29, 2014 plaintiff filed a motion titled "Motion to Stay Motion for Relief."  Plaintiff appears to be seeking relief from what he describes as an "attempt to retaliate and intimidate" him.  Doc. No. 35 at 2.  Plaintiff asserts what appear to be three new claims against the State of Connecticut.

In the first claim raised in the Motion to Stay, plaintiff asserts that the State of Connecticut has retaliated against him in an effort to thwart him from exposing the truth of the abuse of him and his children.  In support of this claim, plaintiff asserts that he mailed a motion to stay and a copy of his federal complaint[3] to the New Haven Judicial District in March 2014.  Plaintiff alleges that the motion to stay was returned to him, and that he then re-submitted the motion in April 2014.  Plaintiff alleges that the State of Connecticut is "now threatening and intimidating" him.

In the second claim raised in the Motion to Stay, plaintiff argues that the State of Connecticut violated his 14th Amendment due process rights by failing to properly serve him with notice of a court hearing.  In support of this claim plaintiff alleges that he lives in his car and other places when it is below 10 degrees in his house.  Plaintiff also states that he is sick and treated for severe

---

[3] Plaintiff does not specify which federal complaint he sent, however, the court will assume for the purposes of this opinion that he sent a copy of the operative complaint in this action.

lung infections and has undergone treatment for cancer over the past 4 months. Plaintiff appears to be alleging that he failed to receive notice for a hearing because he chooses only to live in his house when the temperature is above 10 degrees.  While Plaintiff does not assert that the State of Connecticut should or in fact does know this, he appears to assert that the State should have considered his personal circumstances in setting and giving notice for court hearings in which he has an interest, presumably only sending notices which are delivered to his home on days when the temperature is above 10 degrees.  Plaintiff also reasserts his allegations against Judge DeMayo in this claim.

In the third claim, plaintiff asserts that the State of Connecticut has "disregarded the fact that the plaintiff is a whistleblower and is protected from retaliation by federal whistleblower statutes."  Doc. No. 35 at 3.  In support of this claim plaintiff reasserts his grievances against the State of Connecticut, the New Haven Judicial District, and Judge DeMayo.

Plaintiff seeks a number of forms of relief in his Motion to Stay: (1) a "ruling by the court to stay these retaliatory enforcement procedures by the State of Connecticut"; (2) to be allowed to argue his case in person and to present his case before the presiding judge; (3) to have the State of Connecticut pay a financial penalty to plaintiff for their "willful misconduct"; (4) "reasonable and minimal financial means to counter the State of Connecticut's superiority in administrative ability to present their case"; (5) a complete copy of all file documents in his state court case; (6) "additional remedies which the plaintiff will

present to the court" and "additional remedies against the defendants which the court will determine."  Doc. No. 35 at 3.

Defendant argues in response that the doctrine of *Younger* abstention bars the court from considering plaintiff's claims asserted in the Motion to Stay.  Doc. No. 36 at 1-4.  Because plaintiff's claims are barred by the domestic relations exception, the court need not reach defendant's *Younger* abstention argument.

The arguments in the Motion to Stay are nothing more than a re-statement of Count Five of the second amended complaint.   Plaintiff appears to be seeking injunctive relief here.  Alternatively, the court could view plaintiff as having filed a motion seeking leave to amend his complaint to include these new claims.  The distinction is of no consequence, as the court cannot grant injunctive relief, and it would be futile to allow plaintiff leave to amend his complaint to assert these claims, because the domestic relations exception strips this court of jurisdiction to hear these claims, which are all incident to and essentially seek to challenge the judgment entered in his state domestic relations case.  For the same reasons described above in Part IV.G dismissing Count Five, plaintiff's Motion to Stay is DENIED.

## VI. CONCLUSION

Based upon the above reasoning, defendant's Motion to Dismiss (Doc. No. 25) is GRANTED as to all of plaintiff's claims, and plaintiff's Motion to Stay is DENIED. The clerk is directed to close the case, and to return to plaintiff his USM-Form 285 request.

IT IS SO ORDERED.

_____**/s/**_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: September 30, 2014**